

BARTON BARTON & PLOTKIN LLP
Maurice N. Ross (MR 6852)
420 Lexington Avenue
New York, NY 10170
Tel: (212) 687-6262
Fax: (212) 687-3667
Email: mross@bartonesq.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CASTEL

| | |
|---|---|
| DARRYL POWLUS AND JOHN NOVAJOSKY,<br><br>Plaintiffs,<br><br>-against-<br><br>CHELSEY DIRECT, LLC, HANOVER DIRECT, INC., SCANDIA DOWN, LLC, SCANDIA DOWN ONLINE LLC AND SCANDIA DOWN CORPORATION,<br><br>Defendants. | Index No.:<br><br>09 CV 10461 (KPC)<br>ECF Case<br><u>COMPLAINT</u><br><br>PLAINTIFFS DEMAND JURY TRIAL  |

Plaintiffs, Darryl Powlus and John Novajosky ("Plaintiffs"), by and through their undersigned attorneys, hereby allege as follows:

## NATURE OF THE CASE

1. Plaintiffs bring this action to enforce their exclusive copyright and contract rights, and to redress deceptive and unfair business practices engaged in by defendants. This case arises out of defendants' misconduct relating to photographs created by Plaintiffs in connection with a 2009/2010 advertising and promotion campaign in support of defendants' "Scandia Home" product line, which features pillows, comforters, linens and bedding ensembles. Defendants have wrongly and extensively used at least 26 of Plaintiffs'

1

photographs without paying defendants the compensation agreed to by defendants to obtain rights to use them and, therefore, they have violated their contractual obligations to Plaintiffs and Plaintiffs' copyrights. Defendants engaged in deceptive and unreasonable business conduct to justify their failure to pay the amounts agreed by defendants for use of the photographs and, therefore, defendants have engaged in willful, deliberate and bad faith infringement of Plaintiffs' copyrights. Defendants seek an injunction prohibiting defendants from using plaintiffs' photographs. Defendants seek actual, consequential and statutory damages, including but not limited to statutory damages for willful copyright infringement, in an amount to be proven at trial of at least $4,680,000.00 (Four Million, Six Hundred Eighty Thousand Dollars).

## PARTIES

2. Plaintiff Darryl Powlus is a prominent and experienced art director, creative director and producer whose work has been featured in numerous promotional campaigns in a wide array of industries, including, among others, fashion, home furnishings, retail department stores, and publishing, focusing on marketing goods and merchandise for luxury niche markets. Mr. Powlus resides in the State of New York and maintains offices at 1013 Avenue of the Americas, Suite 400, New York, New York 10018.

3. Plaintiff John Novajosky is a prominent, experienced, professional photographer whose work has been widely licensed and used by numerous clients throughout the United States. Mr. Novajosky resides in the State of Pennsylvania with an address at 2323 Ridge Road, Thompson, PA 18465.

4. Defendant Chelsey Direct LLC ("Chelsey") is a Delaware limited liability company with its principal place of business at 110 East 59th Street, New York, New York.

Chelsey is a holding company for numerous subsidiary entities which, collectively, promote a wide range home furnishings as well as men's and women's apparel under various brand names, including Scandia Home, The Company Store, Domestications, Silhouettees and Undergear, through direct mail and internet marketing campaigns involving the production and dissemination of catalogues and internet web sites.

5. Defendant Hanover Direct, Inc. ("Hanover) is a Delaware corporation with its principal place of business at 1500 Harbor Blvd., Weehawken, NJ 07086. Hanover is a wholly-owned subsidiary of Chelsey. Hanover Direct markets products by mailing more than 180 million catalogs yearly and operating related e-commerce web sites. Hanover also sells its products through affiliated third-party web sites, such as Amazon.com. Hanover engages in substantial, extensive and continuous business within the State of New York and maintains offices at 110 East 59th Street, New York, New York.

6. Defendant Scandia Down, LLC ("Scandia Down") is a Delaware limited liability company, with its principal place of business at 1500 Harbor Blvd, Weehawken, NJ 07086. Scandia Down is a subsidiary of Hanover and Chelsey. Scandia Down and its affiliate, Scandia Down Corporation, produce and market Scandia Down brand comforters, pillows, linens and bedding ensembles for sale in their catalogs, web sites and at three or more retail outlet stores. Scandia Down engages in substantial, extensive and continuous business within the State of New York and maintains offices at 110 East 59th Street, New York, New York.

7. Scandia Down Corporation ("Scandia Corp") is a Delaware corporation with offices at 340 Poplar Street, Hanover, PA 17331. Scandia Corp. is a subsidiary of Hanover and Chelsey. Scandia Corp and its affiliate, Scandia Down, produce and market Scandia Down brand comforters, pillows, linens and bedding ensembles for sale in their catalogs, web sites

and at three or more retail outlet stores. Scandia Down products are also sold at numerous retail stores throughout the United States. Scandia Down does substantial, extensive and continuous business within the State of New York and maintains offices at 110 East 59th Street, New York, New York.

8. Defendant Scandia Down Online LLC ("Scandia Online") is a Delaware limited liability company, with its principal place of business at 1500 Harbor Blvd., Weehawken, NJ 07086. Scandia Online is a subsidiary of Hanover and Chelsea. Scandia Online operates the "Scandia Home" web site through which Scandia Down, Scandia Corp, Hanover and Chelsey market and sell Scandia Down brand comforters, pillows, linens and bedding ensembles. Scandia Online engages in substantial, extensive and continuous business within the State of New York, makes a substantial amount of sales to consumers who reside within the State of New York, and maintains offices at 110 East 59th Street, New York, New York.

9. Defendant Chelsey, Hanover Down, Scandia Down, Scandia Corp and Scandia Online are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

10. This is an action for copyright infringement and permanent injunctive relief under the United States Copyright Act, 17 U.S.C. § 101 et seq, (hereinafter, the "Copyright Act"), and for related state law claims of breach of contract and violation of New York General Business Laws, Article 22A, § 349, and Article 24, § 360(L).

11. This Court has original subject matter jurisdiction pursuant to the Copyright Act, 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338(a) and (b) (jurisdiction over copyright actions). Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental and

pendent jurisdiction over the state claims herein in that these claims are related to, and form part of, the same case and controversy as the federal claims herein.

12. This Court has personal jurisdiction over the Defendants in that Defendants conduct substantial, extensive and continuous business in the State of New York and in this District. See, N.Y. C.P.L.R. § 301. Defendants maintain offices in the State of New York and in this District. Moreover, all Defendants have transacted business within New York and within this District in connection with the matters giving rise to this suit. Id., § 302(a)(1). Defendants have also committed infringing acts outside of New York causing injury to Plaintiffs in New York, and Defendants regularly do or solicit business in New York, and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce. Id. § 302(a)(3)..

13. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c) and/or 1400(a). A substantial part of the events that give rise to the claims in this case, including, but not limited to, acts of infringement, occurred within this District. Further, each Defendant may be found in this District.

## FACTUAL BACKGROUND

14. On or about June 4, 2009, Defendants entered into an agreement with plaintiff Powlus pursuant to which Powlus would produce photographs for use by Defendants in connection with their 2009/2010 advertising and promotional campaign for Scandia Down products in exchange for fees in an agreed amount.

15. Specifically, Plaintiff Powlus agreed to organize and direct a photo-shoot in Sag Harbor, New York and to produce photographs for use by Defendants in their 2009/2001 advertising and promotional campaigns for Scandia Down products.

5

16. Plaintiff Powlus assumed responsibility for organizing the photo shoot, including retaining models, photographers, and hair, makeup, bed and prop stylists, obtaining photographic and lighting equipment and necessary props, and identifying an appropriate location for the photo-shoot.

17. Plaintiff Powlus also assumed responsibility for post-production activities necessary to produce final photographs, including retention of a firm to provide professional retouching and various other related consultations with agents and employees of Defendants.

18. One of Defendants' primary responsibilities with regard to the photo-shoot was to assure that the Scandia Down merchandise that Defendants' desired to promote was delivered on a timely basis to the location of the photo-shoot (a private home in Sag Harbor, New York). Defendants also participated in the project at every stage, approving in advance, models, hair, makeup, bedding and prop stylists, and the photographer (plaintiff Novajosky).

19. Plaintiffs also agreed to provide Defendants with a license to use any photographs resulting from their creative work on the project for a period of thirty-six months (contingent upon Defendants' compliance with their contractual obligations, including payment of the agreed amount of fees to plaintiff Powlus and other contractors retained by plaintiff Powlus to provide services in connection with production of the photographs). In this connection, on August 5, 2009, Scandia Down and plaintiff Novajosky entered into a "Photography Release." Pursuant to the Photography Release, plaintiff Novajosky agreed to grant Defendants the right to use the photographs taken during the photo-shoot for a 36 month term in exchange for a license fee of $11,250.00 plus an additional amount at the rate of $2250 per day devoted by Mr. Novajosky's to post-production activities following the photoshoot, and Mr. Novajosky's travel and other expenses. Taking into account post

production, the total license fee payable to Mr. Novajosky (excluding expenses) was $13,500.00.

20. Plaintiffs' right to use the photographs was also contingent upon their payment of fees to Mr. Powlus at the rates quoted by Mr. Powlus, and agreed in advance of the project by Defendants, for his days of service on the project. More specifically, Defendants agreed (a) to reimburse Mr. Powlus for all expenses reasonably incurred by him on the project, (b) to pay Mr. Powlus' fees in the total amount of $10,425.00 (encompassing 5 days of Art Direction (at the Photo-shoot) at $875.00 per day, 7 days of pre-production at $650.00 per day, and three days post-production at $500.00 per day), and additional fees for any additional days expended by Mr. Powlus in production and post production at the rates of $650.00 and 500.00 respectively), and (c) to pay fees charged by models, photographers, stylists, and retouching contractors in exchange for their participation in the project—although Mr. Powlus retained these participants in the project, Defendants agreed to pay their fees and expenses directly.

21. In fact, with Defendants' knowledge and approval, Mr. Powlus devoted five days to Art Production at the photo-shoot, ten days to pre-production, and four days to post-production. Thus, on September 1, 2009, Mr. Powlus sent an invoice to Defendants requiring payment of $12,875.00 in fees plus reimbursement for expenses, resulting in a total invoice amount of $13,000.04.

22. Pursuant to these agreements with Defendants, plaintiff Powlus successfully organized and directed a photo-shoot, which occurred in Sag Harbor, New York from July 27, 2009 to July 31, 2000. Mr. Powlus retained plaintiff Novajosky, with approval of Defendants, as the photographer for the event, and Mr. Novajosky took more than eight thousand

photographs of the merchandise supplied by Defendants. Defendants' representatives, including Tyler-Heiden Jones and Melanie Kaplan, attended the photo-shoot, reviewed the photographs on-site, and approved photographs taken of each piece of merchandise on site (after having reviewed the digital photographs produced by plaintiffs during the photo-shoot on a lap-top computer screen).

23. During the photo-shoot, Defendants informed Plaintiffs that some of the merchandise that Defendants intended to promote had not arrived on site. The delays in arrival of merchandise caused numerous delays during the actual photo-shoot. Ultimately, through no fault of Plaintiffs, Defendants failed to ensure that all of the merchandise that they had intended to promote arrived during the photo-shoot. As a result, through no fault of Plaintiffs, photographs were not taken of a small percentage of the items of merchandise that Defendants had intended to promote using photographs from the photo-shoot.

24. Following the photo-shoot, Plaintiff Powlus worked closely with Defendants' representatives to assure timely delivery to Defendants of finished photographs suitable for use in Defendants' promotional campaign. Because more than 8000 photographs were taken during the photo-shoot, selection of the final photographs for use in the promotion campaign was a complicated and time-consuming process. Defendants were anxious to begin promotion of certain specified merchandise immediately, and they requested that Mr. Powlus cooperate by expediting the post-production process photographs of specified merchandise. Nine such photographs were identified at the photo-shoot on site and approved by Defendants during the first week of August. By August 6, Mr. Powlus had selected and provided Defendants with 93 photographs (out of more than 8,000) as potentially suitable for the photo-shoot. By August 18, Defendants had approved, in consultation with Mr. Powlus, 64 photographs for use in the

promotional campaign. Given the fact that more than 8000 photographs had to be reviewed, it was a substantial accomplishment for Mr. Powlus to have recommended 93 photographs by August 6, and for Mr. Powlus and Defendants to have jointly approved 64 photographs for use in the promotional campaign by August 18.

25. With Defendants' consent and agreement, plaintiff Powlus retained International Color Services ("ICS"), an experienced, prominent and highly regarded company, to provide retouching services on the 64 photographs. ICS had agreed to retouch the first nine photographs (selected by Plaintiffs and Defendants on-site at the photo-shoot) on an expedited basis. Mr. Powlus promptly requested that Defendants approve a budget for retouching these nine photographs. Defendants' representative, Vince Caporus, first approved a retouching budget on August 13, 2009. The nine retouched photographs were delivered on an expedited and timely basis on August 21, 2009, and promptly thereafter Defendants posted the retouched version of these photographs on their Scandia Home web site. At the time Defendants posted these photographs on their web site, Defendants did not object to the quality of the photographs.

26. Although Mr. Powlus timely provided 93 photographs to Defendants on August 6, 2009, Defendants did not approve the "final" 64 photographs to be used in the promotional campaign until August 18. Retouching work on the first 9 photographs (approved on-site at the photo-shoot) began on or about August 13 (upon Defendants' approval of a retouching budget), and was completed in a timely and expedited basis on August 21, 2009. Retouching work on the remaining 55 photographs could not have begun until August 18, the date when Defendants approved them (together the with the nine photographs selected on-site at the photo-shoot) for use in the Defendants' promotional campaign. Once the remaining 55

9

photographs were approved, Mr. Powlus and ICS worked together to perform retouching work on the remaining photographs on a highly expedited basis.

27. By August 31, 2009, Plaintiffs had timely provided to Defendants at least 64 high quality photographs, and almost all of the photographs had already been retouched by ICS. The retouching work by ICS was exemplary, and the 64 photographs in total supplied by Plaintiffs to Defendants were of extraordinarily high quality.

28. On September 1, 2009, Mr. Powlus submitted an invoice to Defendants in the amount of $13,000.04, including fees of $12,875.00, and un-reimbursed expenses.

29. On August 4, 2009, Mr. Novajosky submitted an invoice to Defendants for unpaid fees and expenses in the amount of $13,708.45.

30. On September 8, 2009, ICS submitted an invoice in the total amount of $20,995.00.

31. Defendants refused to pay the amounts set forth in the invoices submitted by Plaintiffs and ICS. Defendants paid plaintiff Navajosky $9,583.45, substantially less than the amount of license fees required under the "Photography Release." Defendants paid Mr. Powlus only $7300.04, substantially less that the agreed amount of fees. Defendants falsely asserted that the payments to Plaintiffs were "payment in full for services rendered." To date, Defendants have failed to make any payment to ICS.

32. Plaintiffs accepted these payments from Defendants "under protest" and they have repeatedly demanded that Defendants meet their contractual obligations to pay the full amounts set forth in the invoices submitted by Plaintiffs and ICS. Defendants have repeatedly refused plaintiffs' demands for payment in full of the license fees.

33. In violation of clear contractual and legal obligations, Defendants paid Mr.

Powlus only $7,300.00, paid Mr. Navajosky only $9,583.45, and to date have paid nothing to ICS. This failure by Defendants to pay their license fees and contractual obligations to plaintiffs constitutes material breaches of contractual and legal obligations, and has resulted in the loss by Defendants of any license or right which Defendants may otherwise have had to use the photographs in their advertising and promotional campaigns.

34. Defendants have attempted to justify their failure to pay the full amount of their contractual obligations on the grounds that (a) the photographs were submitted by Plaintiffs to Defendants on an untimely basis, and (b) photographs taken by Mr. Novajosky and the retouched images provided by ICS were "not up to brand standard" and "substandard."

35. Defendants' assertions that the photographs taken by Mr. Novajosky and the retouched images were "substandard", "not up to brand standard" and untimely submitted are false, misleading and deceptive.

36. In fact, Mr. Powlus fully cooperated in assuring that nine retouched photographs were available on the earliest possible date. Plaintiffs further cooperated by combing through more than 8,000 photographs on an usually expedited basis to facilitate selection of final photographs for use in the advertising campaign. By August 6, 2009, less than one week after the photo-shoot, Mr. Powlus had already provided defendants with 93 images from which Plaintiffs' and Defendants' representatives would work on a collaborative basis to select the final group of 64 photographs (which would then be retouched). Plaintiffs delayed until August 18, 2009 before making their final selection of 64 images. Thus, any delay in the project was attributable to the fact that Defendants' representatives did not approve the 64 images in a timely manner after Mr. Powlus provided

11

them to Defendants. Plaintiffs' assertion that the photographs were not timely provided is false, misleading and deceptive.

37. Equally false, misleading, and deceptive was Defendants' assertion that the photographs were "substandard" or "not up to brand standard." In fact, Defendants posted the first nine retouched photographs on their Scandia Home web site during the week of August 24, 2009, and they have continued to use these nine photographs in their promotional campaign at all times thereafter. Moreover, beginning in early September, 2009, and notwithstanding their assertions that the photographs were "not up to brand standard", Defendants to date have extensively used at least 26 of the photographs in their 2009/2010 advertising and promotional campaign for Scandia comforters, linens, pillows and bedding ensembles. At least 26 of Plaintiffs' photographs have been featured prominently in Defendants' advertising and promotional campaign. On information and belief, Defendants have also used at least 26 of the photographs in brochures, promotional videos, and showroom presentations. It is fair to say that Plaintiffs' photographs have been the centerpiece of Defendants' 2009/20010 advertising campaign.

38. Defendants' continuing and extensive use of the aforesaid photographs in their 2009/2010 promotional campaigns belies their assertion that the photographs are "substandard" or "not up to brand standard."

39. Defendants' false assertion that the photographs were "not up to brand standard" and "deficient" was a deceptive pretext which Defendants' agents, including Mr. Tyler Heiden Jones, used to justify Defendants' failure to pay the full amount of their contractual obligations.

40. On information and belief, the main reason that Defendants failed to meet

their contractual obligations to Plaintiffs was that Defendants' representatives, including most significantly, Mr. Jones, had failed to ensure that samples of all of the items of merchandise that Defendants had intended to promote were available on site at the July 27-31, 2009 photo-shoot location in Sag Harbor. As a consequence of this mistake by Defendants, Defendants needed to conduct a supplemental photo-shoot to obtain photographs of the missing items of merchandise. However, Defendants' representatives, including Mr. Jones, did not have a budget sufficient to conduct this additional photo-shoot. Accordingly, on information and belief, Defendants and their representative, Mr. Jones, asserted that the photographs provided by Plaintiffs were "not up to brand standard" as a pretext for withholding payment of amounts due to Plaintiffs and thereby freeing up money which could be used for the supplemental photo-shoot of the missing merchandise.

41. Plaintiffs have timely registered copyrights with the United States Patent and Trademark Office ("PTO") for each of the 26 photographs belonging to Plaintiffs which Defendants have wrongfully published and used in support of Defendants' 2009/2010 marketing campaign for Scandia comforters, linens, pillows and bedding ensembles.

42. As a result of Defendants' aforesaid misconduct and material breaches of contract, Defendants have forfeited any license rights that they otherwise may have had to use the photographs.

43. Defendants' unauthorized publications of at least 26 photographs in the Scandia Home web-site and other media have repeatedly, willfully and in bad faith infringed Plaintiffs' copyrights.

44. Further, Defendants' conduct in connection with the aforesaid events has been deceptive, unfair, and in bad faith.

## COUNT I
### Direct Copyright Infringement and Related Claims
### Pursuant to 17 U.S.C. §101 et seq.

45. Plaintiffs reallege and incorporate herein the allegations in Paragraphs 1 through 44.

46. Plaintiffs' own copyright interests in each of the 26 photographs which Defendants have wrongfully used in connection with their 2009/2010 advertising and promotional campaign.

47. Plaintiffs have the exclusive right to prepare derivative works based upon the aforesaid 26 photographs pursuant to 17 U.S.C. § 106(2).

48. Defendants' copying, downloading, use, publication, modification, reproduction, display and distribution of each of the 26 photographs constitutes a violation of the Copyright Act, 17 U.S. C. §s 501(a), 106(1), 106(2) and 106(3) and all Defendants have been acting as infringers within the meaning of 17 U.S.C. § 105(a).

49. By Defendants' participation in the production, distribution, publication, downloading, display and exploitation of the 26 photographs, Defendants have knowingly and willfully infringed, authorized others to infringe, and intend to continue to infringe Plaintiffs' copyrights of each of the 26 photographs.

50. As a proximate result of Defendants' copyright infringement, Plaintiffs have suffered, and will continue to suffer, irreparable injury, some of which cannot be compensated in money damages if such wrongful conduct continues.

51. Plaintiffs are entitled to a permanent injunction pursuant to 17 U.S.C. § 502 enjoining all Defendants, their officers, agents, employees, licensees, assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in such further

violations of the Copyright Act.

52. Plaintiffs are entitled to a permanent injunction against all Defendants, their officers, agents, employees, licensees and assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in or authorizing the copying, distribution, displaying and/or exploitation of any of the aforesaid 26 photographs.

53. Plaintiffs are entitled to recover from Defendants the damages, including pre-judgment interest, which Plaintiffs sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged hereinabove pursuant to 17 U.S.C. § 504(b), in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

54. Plaintiffs are entitled to the maximum statutory damages in the amount of $30,000.00 per infringement (at least $780,000.00 for at least of 26 acts of infringement), and/or $150,000.00 per willful infringement (at least $3,900,000.00 for at least 26 acts of infringement), pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper under 17 U.S.C. § 504(c). Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505; and

55. Plaintiffs are also entitled to such other and further relief and remedies as are available under the Copyright act, and /or which the Court may deem just and proper, including punitive damages.

### COUNT II
**Contributory Copyright Infringement and Related Claims
Pursuant to 17 U.S.C. §101 et seq.**

56. Plaintiffs reallege and incorporate herein the allegations in Paragraphs 1 through 55.

57. Defendants' conduct, as alleged in this Complaint, constitutes contributory infringement of Plaintiffs' copyrights in violation of § 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

58. Defendants directly encouraged, facilitated, and/or induced the unauthorized reproduction, adaptation, distribution, and public display of Plaintiffs' works by others. Thus, Defendants are contributorily liable for Plaintiffs' damages resulting from same.

59. Plaintiffs are entitled to recover from the Defendants the damages that Plaintiffs have sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of the Defendants' contributory infringements alleged in this Complaint, or in the alternative statutory damages, as well as attorneys fees, and including but not limited to such damages and awards as are available under 17. U.S.C. §§504-505.

60. Plaintiffs have no adequate remedy at law.

## COUNT III
### Breach of Contract

61. Plaintiffs reallege and incorporate herein the allegations set forth above in Paragraphs 1 through 60

62. Defendants materially breached their contractual and license obligations to Plaintiffs, including Plaintiffs' license and/or grant to Defendants of rights to use Plaintiffs' copyrighted photographs.

63. As a result of Defendants' aforesaid material breaches, Plaintiffs' licenses and/or grants to Defendants of rights to use Plaintiffs' photographs are terminated, null, void and unenforceable, and Defendants have lost any rights they may otherwise have had to use such photographs.

64. As the direct and proximate consequence of Defendants breaches of their

contractual obligations to Plaintiffs, Plaintiffs have suffered actual and consequential damages in an amount to be determined at trial.

## COUNT IV
### Violation of New York General Business Law
### Article 22A § 349 and Article 25, § 360(L)

65. Plaintiffs reallege and incorporate herein the allegations set forth above in Paragraphs 1 through 64.

66. Defendants' deceptive actions for the purpose of avoiding their contractual obligations to Plaintiffs constitute unlawful, unfair business practices and unfair competition under New York General Business Law Article 22(A) § 349.

67. Defendants' false and deceptive assertions that photographs produced by Plaintiffs were "substandard", "not up to brand standards" and "untimely delivered" have wrongly injured plaintiffs' business reputation in violation of Article 24, § 360(l).

68. As a result of Defendants aforesaid violations of New York law, Plaintiffs' have been irreparably harmed, and Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT V
### Unjust Enrichment

69. Plaintiffs reallege and incorporate herein the allegations set forth above in Paragraphs 1 through 68.

70. Defendants have been unjustly enriched in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against the Defendants as follows:

A. Enjoining Defendants from using Plaintiffs' photographs for any purpose, including, but not limited to, their 2009/2010 advertising and promotional campaign for Scandia products, including but not limited to comforters, pillows, linens and bed ensembles;

B. Ordering an accounting of all revenue received by the Defendants as a result of their unlawful conduct;

C. Awarding Plaintiffs: 1) Defendants' profits realized as a result of the copyright infringement, or in the Court's discretion, such sum as the Court finds to be just; 2) damages sustained by Plaintiffs; 3) reasonable attorneys' fees; and 4) the costs of this action;

D. Awarding Plaintiffs statutory damages in the amount of at least $4,680,000.00 and attorneys' fees pursuant to 17 U.S.C. §§ 504-505;

E. Awarding Plaintiffs actual, consequential and punitive damages arising from Defendants' breaches of contract and violations of New York Law;

F. Awarding Plaintiffs prejudgment and post-judgment interest on any monetary award in this action;

G. Awarding Plaintiffs attorneys' fees and costs incurred in this action; and

H. Granting such other and further relief as to this Court deems just and proper.

Dated: December 23, 2009

BARTON BARTON & PLOTKIN LLP

By: _____
Maurice N. Ross